# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs November 28, 2001

## STATE OF TENNESSEE v. ROGER EDWARD EDWARDS

### Direct Appeal from the Criminal Court for Claiborne County
### No. 11,263    E. Shayne Sexton, Judge

_____

### No. E2001-00705-CCA-R3-CD
### May 14, 2002

_____

Defendant appeals the trial court's denial of defendant's request to withdraw his guilty plea and motion for a new trial. On appeal, defendant has two assertions: (1) he received ineffective assistance of counsel and (2) the State committed a Brady violation. Concluding that defendant received effective assistance of counsel and did not demonstrate a Brady violation, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and ALAN E. GLENN, JJ., joined.

David H. Stanifer, Tazewell, Tennessee (at trial); Douglas A. Trant, Knoxville, Tennessee (on appeal); and Johnny Von Dunaway, LaFollette, Tennessee (on appeal), for the appellant, Roger Edward Edwards.

Paul G. Summers, Attorney General and Reporter; Gill Robert Geldreich, Assistant Attorney General; William Paul Phillips, District Attorney General; Jared R. Effler, William T. Longmire, and Michael O. Ripley, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

Defendant, Roger Edward Edwards, was indicted by a Claiborne County Grand Jury on April 5, 1999, for attempted first degree murder, aggravated assault, and for carrying a handgun in a public place. Defendant pled not guilty, and trial was set. On August 6, 1999, defendant entered a guilty plea for attempted second degree murder with a recommended Standard Range I sentence of eight years. The judgment was entered on April 20, 2000.

Defendant filed a motion to withdraw his guilty plea or, in the alternative, a motion for new trial on May 16, 2000, claiming ineffective assistance of counsel. Following a hearing on

December 4, 2000, the trial court denied defendant's motion to withdraw his guilty plea and his motion for new trial. Defendant filed a timely notice of appeal.

## Facts

Mary Cupp and defendant's trial counsel were the only witnesses to testify at the hearing on defendant's motion to withdraw his guilty plea and motion for new trial. The evidence reveals that on December 6, 1998, defendant Roger Edward Edwards attended an auction at the Trader's Valley Auction in Claiborne County conducted by Gary Holbrook, auctioneer, and Cupp, part-owner with Holbrook of the Trader's Valley Auction. At one point during the auction, Cupp told defendant to leave because he was disturbing the rest of the bidders. Cupp stated in an August 2000 deposition that defendant had been drinking "moonshine." The deposition was taken in civil case between Cupp and defendant for personal injuries suffered by Cupp at the auction. Excerpts from the deposition were entered as exhibits at the hearing on the motion for a new trial and motion to withdraw the guilty plea.

Cupp testified that after defendant left the auction, defendant returned sometime later to pay for the items he had purchased. After he returned, an altercation broke out between defendant, Cupp, and Holbrook. During this altercation, defendant fired a shot that wounded Holbrook. Cupp gave this testimony in the August 2000 deposition.

On the day of the incident, December 6, 1998, Cupp gave a statement to Officer William Hunter of the Claiborne County Sheriff's Department, in which she stated that defendant approached her and Holbrook at the auction and was angry over Cupp telling defendant to leave earlier in the auction. Cupp stated that she told defendant they would discuss the problem later. At this point, defendant pushed Cupp. Cupp then pushed defendant back, defendant fell onto a stack of boxes, and Cupp fell forward on top of defendant. At this point, Holbrook was standing behind Cupp. Cupp stated that defendant pulled out a gun and, after a brief struggle, put the gun to Cupp's ribs. Cupp stated that she grabbed defendant's arm in an attempt to get the gun away. However, she was unable to do so, and defendant fired the gun. The bullet missed Cupp and struck Holbrook.

On March 29, 1999, Officer Hunter again interviewed Cupp and took a written statement in which she stated that she only wanted to change the part concerning the struggle over the gun. In her statement, Cupp said that when she fell forward onto defendant, she saw he was holding a gun. During the struggle, she felt the barrel of the gun against her rib cage. She stated that she struggled to get away from defendant, shoving him with her mid-section, at which point the barrel of the gun slipped off of her ribs and fired, wounding Holbrook. Both of Cupp's statements were given to trial counsel in discovery.

Cupp testified that trial counsel never attempted to contact her. She further stated that had trial counsel contacted her, she would have been willing to talk.

In August of 1999, defendant pled guilty to attempted second degree murder for the shooting of Holbrook. On August 25, 2000, Cupp gave a deposition in a separate civil matter

that she had filed against defendant for personal injuries. In her deposition, Cupp stated that the gun went off after she shoved defendant with her "rear," and the gun slipped off of her ribs. She further stated that defendant did not point the gun at Holbrook, nor did defendant run toward Holbrook. Lastly, Cupp stated in the deposition that she recounted the events to the officers on the night of the shooting just as she had done in the deposition.

Defendant offered into evidence the statement of Fred Brock, a witness to the events of December 6, 1998. Brock stated that he saw defendant go up to Cupp and start talking to her. He further stated that Holbrook got up and moved toward Cupp and defendant. Brock said, "[A]ll three were strugeling [sic], then I heard a gunshot. Afterwards I heard the shooter say that [Holbrook] had a knife, but I did not see one."

Trial counsel for defendant testified that the State provided him with the statements from Cupp and Brock prior to the entry of defendant's guilty plea. He further stated that he did not attempt to contact Brock. Trial counsel stated he did attempt to contact Cupp. Trial counsel stated, however, "[Cupp] and I were not on the same page . . . I was almost as much an adversary as [defendant] was." He said that he contacted other witnesses and they were consistent in their versions of the events.

Trial counsel testified that he told defendant what his options were, and his main objective was to get a plea agreement whereby defendant could plead guilty to a lesser charge and be eligible for probation.

During cross-examination, trial counsel agreed that the statement of Brock, along with other statements, introduced the possibility that the victim in this case may have made an aggressive lunging movement. He also agreed that it introduced the possibility that a knife may have been used. Trial counsel further testified he filed a civil suit against Cupp on behalf of defendant. He admitted he had taken no action to compel Cupp to testify in the criminal or civil cases. Trial counsel was then given excerpts from a deposition taken of Cupp to which counsel responded it was not consistent with her first statement. However, trial counsel would not opine whether this would have changed his trial or negotiation strategy.

## Analysis

On appeal, defendant raises two issues: (1) whether trial counsel was ineffective for failing to adequately investigate and use exculpatory witness statements and (2) whether there was a Brady violation when the State allegedly failed to turn over exculpatory statements.

We initially note that the State asserts that defendant's motion to withdraw his guilty plea was not timely filed. Therefore, the State contends, the trial court lost jurisdiction and could not entertain defendant's motion. In Tennessee,

> [a] motion to withdraw a plea of guilty may be made upon a showing by the
> defendant of any fair and just reason only before sentence is imposed; but to
> correct manifest injustice, the court after sentence, but before the judgment

becomes final, may set aside the judgment of conviction and permit the defendant to withdraw the plea.

Tenn. R. Crim. P. 32(f).

In the instant case, defendant did not file a motion to withdraw his guilty plea until May 16, 2000, over nine months after his plea on August 6, 1999. However, the trial court did not enter judgment until April 20, 2000. A trial court's judgment becomes final thirty days after entry unless there is filed a timely notice of appeal or a specified post-trial motion. Tenn. R. App. P. 4(a) and (c). Recently, our supreme court ruled that a motion to withdraw a guilty plea should be treated as a post-trial motion tolling the time which the judgment becomes final. The court further held that a direct appeal lies when a defendant's motion to withdraw his or her guilty plea is denied by the trial court. State v. Peele, 58 S.W.3d 701 (Tenn. 2001). In this case, the judgment was not filed until April 20, and it did not become final until thirty days later, that is, May 20. As such, defendant had until May 20 to file his motion for new trial and motion to withdraw the guilty plea. The motion was filed on May 16 within permitted time limitation and was timely.

Having determined that defendant's motion was timely, we now turn to the two issues raised by defendant on appeal.

I.      *Ineffective Assistance of Counsel*

Defendant contends that he received ineffective assistance of counsel because his trial counsel failed to contact or investigate two potential witnesses. We disagree and affirm the trial court's judgment.

This Court reviews a claim of ineffective assistance of counsel under the standards of Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984), and Baxter v. Rose, 523 S.W.2d 930 (Tenn. 1975). The defendant has the burden to prove that (1) the attorney's performance was deficient, and (2) the deficient performance resulted in prejudice to the defendant so as to deprive him of a fair trial. Strickland, 466 U.S. at 687, 104 S. Ct. at 2064; Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996); Overton v. State, 874 S.W.2d 6, 11 (Tenn. 1994); Butler v. State, 789 S.W.2d 898, 899 (Tenn. 1990). If a defendant fails to prove one prong, the reviewing court need not consider the other. Harris v. State, 947 S.W.2d 156, 163 (Tenn. Crim. App. 1996).

The test in Tennessee to determine whether counsel provided effective assistance is whether his performance was within the range of competence demanded of attorneys in criminal cases. Baxter, 523 S.W.2d at 936. The defendant must overcome the presumption that counsel's conduct falls within the wide range of acceptable professional assistance. Strickland, 466 U.S. at 689, 104 S. Ct. at 2065; Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998); Alley v. State, 958 S.W.2d 138, 149 (Tenn. Crim. App. 1997). Therefore, in order to prove a deficiency, a defendant must show that counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms. Strickland, 466 U.S. at 688, 104 S. Ct. at 2065; Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997); Goad, 938

-4-

S.W.2d at 369.  In order to prove prejudice, a defendant must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.

In reviewing counsel's conduct, a "fair assessment . . . requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689, 104 S. Ct. at 2065.  The fact that a particular strategy or tactic failed or hurt the defense, does not, standing alone, establish unreasonable representation.  However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation.  Goad, 938 S.W.2d at 369; Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982); Alley, 958 S.W.2d at 149; Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Additionally, we emphasize that the practice of raising ineffective assistance of counsel claims on direct appeal is "fraught with peril." Wallace v. State, No. 01C01-9308-CC-00275 (Tenn. Crim. App. at Nashville, Sept. 15, 1994).  Accordingly, "ineffective assistance of counsel claims should normally be raised by petition for post-conviction relief." State v. Turner, No. 02C01-9512-CR-00390 (Tenn. Crim. App. at Jackson, June 11, 1997), perm. to appeal denied (Tenn. Feb. 23, 1998).  However, because the record in this case is composed of testimony regarding the ineffective assistance of counsel claim, we deal with the issue on the merits.

Because defendant pled guilty, there are additional requirements to show that he was entitled to relief.  "In cases involving a guilty plea . . . [the defendant] must show 'prejudice' by demonstrating that, but for counsel's errors, he would not have pleaded guilty but would have insisted upon going to trial." Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App.), perm. to appeal denied (Tenn. 1998) (citing Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370, 88 L.Ed. 2d 203 (1985), and Bankston v. State, 815 S.W.2d 213, 215 (Tenn. Crim. App. 1991)). Hill explains the showing of prejudice, which must be made by a petitioner who entered a guilty plea:

> In many guilty plea cases, the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial.  For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial.

474 U.S. at 59, 106 S. Ct. at 370.

In the instant case, witness Brock gave a statement to police whereby he indicated that he heard defendant say that the victim had a knife.  However, Brock also stated that he did not see a knife.  Trial counsel, in his testimony, did not rule out the possibility that he tried to contact

Brock, but he did not recall ever talking to Brock. However, he said that all of the other witness statements were consistent in that they did not mention the possibility of the victim having a knife. Because the remaining witnesses were consistent in their statements, and Brock himself stated he saw no knife, defendant has not demonstrated that, but for counsel's performance, he would not have pled guilty but would have insisted on going to trial. The evidence is clear that defendant was aware of Brock's statement before pleading guilty.

Likewise, defendant has not demonstrated that any testimony by Cupp would have changed anything. Defendant certainly has not proven how any statements made by Cupp were clearly exculpatory. Neither has defendant proven that trial counsel's performance was deficient. In fact, trial counsel had read the statements and was aware of them as he had received them in discovery.

In regards to the deposition Cupp gave that contained information, which, defendant alleges, would have been exculpatory, we conclude that trial counsel is not to be judged upon facts received after the plea, and we will not review trial counsel's performance based on a deposition taken of a witness after a defendant's guilty plea is taken. Beck v. State, No. 03C01-9412-CR-00452, 1995 WL 507726, at *4 (Tenn. Crim. App. at Knoxville, August 29, 1995) (citing Kimmelman v. Morrison, 477 U.S. 365, 380, 106 S. Ct. 2574, 2586 (1986)) (stating that counsel's decision not to call a witness doesn't depend upon what the witness *now* states he would have testified to had he been called).

Trial counsel stated that he was provided with the State's file in discovery, and no other witnesses supported the possibility that the victim had a knife and lunged at defendant. Trial counsel even stated that he interviewed other witnesses outside the scope of the State's discovery in hopes of finding helpful information. We agree with the trial court's finding that defendant's trial counsel did not render ineffective assistance, nor was trial counsel's performance prejudicial. Given the fact that defendant's attorney provided effective assistance of counsel before defendant pled guilty, we are at a loss to understand how defendant could carry his burden of proof without testifying as to any prejudice.

We agree with the State that trial counsel, rather than "roll the dice," gave defendant the best possible options known to counsel at that time and allowed defendant to make his own decision. We conclude, therefore, that trial counsel was not deficient, nor was his performance prejudicial.

II.     *Brady Violation*

In his brief, defendant asserts that the State committed a Brady violation in that it did not turn over statements that were allegedly exculpatory. In Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), the United States Supreme Court held that the prosecution has a constitutional duty to furnish the accused with exculpatory evidence pertaining to either the accused's guilt or innocence and the punishment that may be imposed. Failure to reveal exculpatory evidence violates due process when the evidence is material either to guilt or punishment, irrespective of good faith or bad faith of the prosecution. Id. at 87, 83 S. Ct. at

1196-97. However, as previously noted, defendant does not specify what was exculpatory. In any event, the record reflects that trial counsel did have Cupp's and Brock's statements before the guilty plea. The only thing left was Cupp's deposition, which was taken over a year after the plea was entered. No evidence of a <u>Brady</u> violation has been shown.

## CONCLUSION

Accordingly, we affirm the judgment of the trial court.

_____
JOHN EVERETT WILLIAMS, JUDGE